IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY on its own behalf and as assignee of XTERA COMMUNICATIONS, INC., CARL De WILDE, JON BAYLESS, CHRIS RYAN, MOHAMMED ISLIM, JAMES SIMMONS, CLIFF HIGGERSON, TOM McCONNELL AND THOMAS ASCHENBRENNER,<br><br>      Plaintiff,<br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>      Defendant. | Civ. No. 3:04-CV-2267 - H |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Great American Insurance Company's ["GAIC"] Motion for Partial Summary Judgment, and supporting brief and appendix, filed October 21, 2005; Defendant Federal Insurance Company's ["Federal"] Response in Opposition, and appendix, filed November 10, 2005; Plaintiff GAIC's Reply, filed November 28, 2005; Defendant Federal's Motion for Summary Judgment, and supporting brief and appendix, filed October 25, 2005; Plaintiff GAIC's Response to Federal's Motion, and appendix, filed November 11, 2005; Defendant Federal's Reply, filed November 29, 2005; Plaintiff GAIC's letter brief, submitted January 17, 2006; Defendant Federal's letter brief, submitted February 6, 2006; Defendant Federal's Motion for Leave to File Supplemental Brief, filed February 10, 2006; Plaintiff GAIC's Response to Defendant's Motion for Leave to File, Filed February 17, 2006; Defendant's Reply, filed February 22, 2006; Defendant Federal's Motion for Separate Trials, filed March 22, 2006; Plaintiff's

Opposition to Defendant's Motion for Separate Trials, filed March 23, 2006; and Defendant's Reply, filed April 6, 2006.

On July 20, 2006, oral argument was held on the cross-motions for summary judgment. For the reasons given in this opinion, Plaintiff's partial motion for summary judgment is granted in its entirety. Defendant's motion for summary judgment is granted as to GAIC's statutory causes of action, and is otherwise denied.

## I. Background

This insurance contract case is brought to determine an insurer's duty to defend and indemnify its insured in an underlying defamation lawsuit. Xtera Communications, Inc. ["Xtera"] was sued by a former employee who was wrongfully accused of murder. Xtera was covered by three potentially applicable insurance policies -- one written by Plaintiff Great American Insurance Company ["GAIC"], and two by Defendant Federal Insurance Company ["Federal"]. Federal refused coverage; and GAIC paid for the defense and settlement of the suit. GAIC (on its own behalf and as assignee of Xtera's rights for purposes of this case) is now suing Federal for costs of defense and settlement of the underlying case. Xtera itself is not a party here.

The background facts of the underlying lawsuit bear heavily on the claims in this case. On or about December 26, 2002, a former Xtera employee, Paul Wooley, filed his Original Complaint against Xtera, claiming that Xtera managers and employees gave local police false information that led to his wrongful arrest and detention on the charge of murder. *See Wooley v. XTERA Communications, Inc.*, Civ. No. 2:02-CV-323-TJW (E.D. Tex.) ["Wooley Lawsuit"]. Wooley had resigned from Xtera earlier in the day on which a gunman later opened fire at a local medical center, wounding one nurse and

killing another. The murder victim was a friend of Xtera's human resources manager, with whom Wooley may have had words before he departed. There is evidence that Wooley communicated with a co-worker after leaving Xtera and mentioned that he had firearms and wasn't sure where he was going or what he was going to do.

It turned out that all Wooley had in mind was a nice long hunting and fishing trip up in the mountains, maybe to Colorado, perhaps all the way to Alaska. However, his words in conjunction with his resignation were dramatically misinterpreted as a threat of violence. After the shooting occurred, Xtera employees reported Wooley as a potential murder suspect and/or a threat to Xtera's security.[1] Xtera requested and received police protection for its premises. Unaware of the shootings, Wooley drove off to begin his trip and was soon picked up and booked for murder. He was ultimately released and cleared of any involvement in the crime. While in jail, however, Wooley was allegedly denied medications for a heart condition and depression; and he was allegedly subjected to dehumanizing treatment, threats, and intolerable living conditions. In the subsequent lawsuit, he sought damages for defamation and negligence against Xtera, and certain individual employees, for physical injury, pain and suffering, medical expense, and other compensatory and punitive damages. He also alleged that even after Xtera employees knew he could not possibly be involved in the murder, they did nothing to retract or alter their statements, on which the police continued to rely.

The Wooley Lawsuit was resolved by settlement in the amount of $650,000. Xtera incurred $175,000 in defense costs. Plaintiff GAIC, which insured Xtera for

---

[1] The parties' dispute over Xtera employees' subjective intent in contacting the police is, for reasons explained herein, meaningless to this inquiry.

employment practices liability, funded an additional $103,745.09 in defense costs (although it had no duty to defend under its policy), as well as the full settlement amount. In addition to the GAIC policy, Xtera also had liability coverage with Defendant Federal, the extent of which is in dispute here. In February 2004, Xtera and its named employees, in exchange for GAIC's funding the Wooley Lawsuit, assigned their rights and claims against Federal to GAIC. XTERA retained a 23% interest in any recovery.

On October 21, 2004, GAIC filed this case against Federal alleging breach of contract and violations of section 17.45 of the Texas Deceptive Trade Practices Act ["DTPA"] and section 21.21 of the Texas Insurance Code ["Insurance Code"]. Xtera was insured by two Federal policies, a primary general liability policy, No. 3575-38-68DAL, with an applicable policy period and a limit of $1 million ["Policy One"]; and an umbrella insurance policy, No. 7980-23-95DAL, with an applicable policy period and a limit of $10 million ["Policy Two"]. Plaintiff asserts that Defendant was obligated under one or both of the policies to defend the Wooley Lawsuit as primary insurer, and to indemnify the Xtera defendants for the settlement amount. Furthermore, Plaintiff GAIC alleges that Federal's refusal to do either was in bad faith.

Accordingly, in its motion for partial summary judgment, GAIC asks for a total award of $928,745.09, plus interest and attorney's fees. GAIC does not move affirmatively for summary judgment on its statutory claims. In the cross-motion for summary judgment, Defendant Federal argues that all of Plaintiff's causes of action should be dismissed on grounds that neither Policy One nor Policy Two covers the events in question; or, in the alternative, that fact questions on these issues preclude summary judgment. Federal also asserts that GAIC's claims for DTPA and Insurance Code

violations should be dismissed as untenable, because neither statute recognizes insurance coverage claims brought in subrogation, or brought by an assignee.

## II.  Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment shall be rendered when the evidence establishes that there is "no genuine issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994); *Armstrong v. City of Dallas*, 829 F. Supp. 875, 876 (N.D. Tex. 1992), *aff'd* 997 F.2d 62 (5th Cir. 1993). Under proper circumstances, awarding summary judgment is favored in the federal courts: "Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

A summary judgement movant must inform the court of its basis for the motion and identify the material specified in Rule 56(c) that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (en banc).

If the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 324. A party opposing summary judgment must go beyond the pleadings and "set forth specific facts" showing

5

that there is a "genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ruiz*, 12 F.3d at 513; *Armstrong*, 829 F. Supp. at 876. A party opposing summary judgment may not rest on mere conclusory allegations or denials in the pleadings. Fed. R. Civ. P. 56(e); *see also Hightower v. Texas Hosp. Ass'n.*, 65 F.3d 443, 447 (5th Cir. 1995). Furthermore, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. There must be "significant probative evidence" on which a jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 249.

In determining whether a genuine issue exists for trial, the Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the nonmovant. *Eastman Kodak v. Image Technical Servs., Inc.*, 504 U.S. 451, 456-58 (1992); *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990); s*ee also Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir. 1993). If the record, taken as a whole, cannot "lead a rational trier of fact to find for the nonmoving party," no genuine issue remains for trial. *Matsushita*, 475 U.S. at 587; *see Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

### III. Analysis

With these summary judgement standards in mind, the Court turns to an analysis of the motions in this case. First under consideration is GAIC's partial motion for summary judgment on Federal's duties to defend and indemnify Xtera in the Wooley Lawsuit.

6

A.  Federal's Duty to Defend

GAI alleges that Federal had a duty to defend Xtera and its employee defendants in the Wooley Lawsuit. Federal argues in opposition that both of its policies contain an exclusion for the type of injury claimed.

As a general rule, insurance contracts are interpreted under the same rules of construction as standard contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). One significant difference, however, applies. If coverage is disputed by virtue of a named exclusion, the court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Atofina Petrochems., Inc. v. Continental Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (citing *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 554 (Tex. 1991)). To be enforceable, an insurer's intent to exclude coverage must be expressed in clear and unambiguous terms. *Hudson Energy,* 811 S.W.2d at 555.

An insurer's duty to defend a lawsuit arises if the factual allegations against the insured, fairly and reasonably construed, state a cause of action potentially covered by the policy. *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex. App.--Dallas 1993, writ denied). If it appears from the petition that a single claim covered by the policy is alleged, the insurer is required to defend the entire case. *See Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex. App.--Austin 2000, no writ); *Hudson Energy*, 811 S.W.2d at 554. Whether or not the injured person's petition states facts sufficient to bring the case clearly within the coverage, the insurer is

obligated to defend if the facts support even a potential claim. *St. Paul Ins. Co. v. Rahn*, 641 S.W.2d 276, 279 (Tex. App.--Corpus Christi 1982, no writ). Any doubts in that regard will be resolved in the insured's favor. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24-26 (Tex. 1965).

To determine whether a duty to defend an underlying lawsuit exists, a court may look only at the insurance contract and the underlying lawsuit's complaint or petition. *Id*. Under this "eight corners" rule, the pleaded facts must be examined in light of the policy provisions, without reference to the allegations' truth or falsity. *Id.* The focus is on the pleadings' factual allegations, not on the legal theories advanced. *Texas Cnty Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). The district court must "review the allegations made in the court petitions . . . in light of the exclusions in the insurance contracts." *Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.*, 2 F.3d 105, 107 (5th Cir. 1993) (applying Texas insurance law). In this case, therefore, the Court will examine allegations in the Wooley Lawsuit petition and compare it with the exclusionary clauses of Federal's Policy One and Policy Two.

In his Original Complaint, Wooley alleges that Xtera and certain of its employees defamed him to the police and to the media; and negligently or intentionally allowed the false information to stand even when they knew or should have known that Wooley had nothing to do with the shootings. The claims sound generally in negligence and defamation.

Under both Policy One and Policy Two, Federal had a duty to defend claims made against Xtera and its employees for any "oral or written publication of material that slanders or libels a person or organization." Pol. One at 19; Pol. Two at 14. Thus,

8

coverage exists unless an exclusionary clause applies. Policy One contains the following exclusion:

> This insurance does not apply to any damages sustained by any person at any time, whether or not sustained in the course of employment by any insured, which would not have been incurred in whole or in part but for any one or more employment-related acts, omissions, policies, practices, representations or relationships in connection with any insured, occurring in whole or part at any time, including any: . . . (4) defamation or disparagement . . ..
>
> This exclusion applies . . . whether the insured may be liable as an employer or in any other capacity . . ..

Pol. One at 20-21. Pared to essentials, Policy One excludes defamation injury *occurring at any time* if it is *caused in fact* by *employment-related acts or relationships*.

Policy Two[2] has the following exclusion that is similar but worded differently:

> [T]his insurance does not apply to any liability arising out of any damages sustained by . . . any person whether or not sustained in the course of employment by any insured, arising out of any employment-related act, omission, policy, practice, or representation directed at such person, occurring in whole or in part at any time, including any . . . defamation or disparagement . . ..
>
> This exclusion applies . . . whether the insured may be liable as an employer or in any other capacity . . ..

Def. App. Ex. C, at 34-35 (Policy Two Endorsement). More succinctly, Policy Two excludes damages for defamation injury occurring *at any time* and *arising out of* an *employment-related act.*

---

[2] Coverage A of Policy Two mirrors Policy One's coverage, in additional amount. References to Policy Two are directed only at Coverage B.

9

Federal argues that the Wooley Lawsuit claims fall under this exclusion. Federal maintains that the whole scenario "arises out of" an employment-related act, *i.e.*, Xtera's security concerns; and/or would not have occurred "but for" the employment "relationship" between Wooley and Xtera. In opposition, GAIC argues that the defamation was not related to and did not affect Wooley's job conditions, position, salary, benefits, performance, or termination, and thus cannot reasonably be held to be "employment-related." The respective positions are well-briefed and were well-argued by counsel for both sides. After due consideration, the Court holds that because Wooley claimed in the underlying lawsuit to have been defamed as a murder suspect, and not as an employee, and because he sued for damages arising from his consequent incarceration, and not from employment-related injury, the exclusionary clauses of the Federal policies do not apply.

The Court so holds for four independent reasons.[3] First, the exclusionary language is not as broad as Federal would like the Court to interpret it to be. At issue is the scope of the term "employment-related." Federal construes the term to be more like the phrase "work-related." Moreover, Federal has attempted to obscure the phrase's limits by emphasizing Policy One's admittedly broad term "relationship." The policy exclusion is not, however, for an injury caused by a "work relationship," as Federal has blurred the phrase. Rather, the exclusion is for an *employment-related* relationship, or act or practice. Although no case is factually on point (or even in the ballpark), Texas

---

[3] The focus of the discussion is on the language in Policy One. Because the exclusion for Policy One is broader than for Policy Two, the analysis is even more straightforward for Policy Two.

courts have generally interpreted insurance exclusion clauses for "employment related" injury narrowly. In *Altivia Corp. v. Greenwich Insurance Co.*, for example, the appellate court construed a defamation claim as "employment related" because it rested on a report of a former employee's job performance to a prospective employer. *See* 161 S.W.3d 52, 54 (Tex. App.--Houston [14th Dist.] 2004, no writ history). In significant contrast, "employment related" was construed in *Acceptance Insurance Co. v. Lifecare Corp* not to encompass inaccurate information given to a former employee's new employer, in part because the information in question did not concern a job performance evaluation. *See* 89 S.W.3d 773 (Tex. App.--Corpus Christi 2002, no writ). In *Waffle House, Inc. v. Travelers Indemnity*, the court construed "employment related" not to encompass defamation of a former-employee-turned-competitor, when the false statement was motivated not by employment practices but instead by market competition concerns. *See* 114 S.W.3d 601, 608-09 (Tex. App.--Ft. Worth 2003, writ denied). In all of the cases cited by the parties, "employment related" has been interpreted as bearing strictly on job performance, or otherwise related to the terms and conditions of employment. No court in this jurisdiction has held otherwise, and this Court declines to be the first to do so.

Second, Federal's exclusion argument fails for causation in fact. Policy One excludes injury that would not have occurred "but for" an employment-related act or relationship. GAIC notes correctly that under a strict "but for" analysis, Henry Ford can be blamed for every car wreck. A proper "but for" analysis under Texas law requires that an event be a "substantial factor" in causing an injury. *See IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason,* 143 S.W.3d 794, 798-800 (Tex. 2003). To be a substantial factor, conduct must do more than "furnish a condition" that makes the injury

11

possible. *Id*. In this case, the Xtera work relationship is merely the context in which the injury occurred. The injury as Wooley alleged it in his lawsuit was caused, however, by Xtera's calling the police, which in turn was caused by the perception of a public duty to do so. *Cf. Waffle House*, 114 S.W.3d at 609 (finding no causation between an "employment related act" and defamation motivated by marketplace competition).

Third, Federal's exclusion argument fails because Texas law requires the Court to accept an insured's construction of an exclusionary endorsement so long as it is "not unreasonable," whether or not the insurer's construction is equally or more reasonable. *See Atofina Petrochemicals, Inc. v. Continental Cas. Co.,* 185 S.W.3d 440 (Tex. 2005). Here, as elucidated above, the Court finds GAIC's construction of the phrase "employment-related," as referring to job performance or the terms and conditions of employment, to be eminently reasonable.[4]

Finally, reading the exclusions as Federal asks the Court to do would render Xtera's coverage under the Federal policies largely illusory. *See Atofina,* 185 S.W.3d at 444. Both Policy One and Two purport to cover defamation committed "in the course of [Xtera's] business" and/or by "employees within the scope of their employment." Pol. One at 19; Pol. Two at 14. Such injury by definition would often, perhaps usually, occur within the context of the work environment; and it would not occur but for Xtera employees' work-related relationship to the aggrieved party. Federal's amorphous

---

[4] Although Federal argues that the Court must make a finding of policy ambiguity before accepting an insured's construction of an exclusionary clause, the Texas Supreme Court neither articulated that requirement nor so found in its latest word on the issue. *E.g.*, *Atofina,* 185 S.W.3d at 444.

reading of the exclusion language would negate in large part the coverage the policy is meant to provide.

Having interpreted the policies' exclusionary clauses, the Court now returns to the Wooley Complaint. Multiple claims are alleged, and not all are related to the police reports. In paragraph 75 of the Original Complaint,[5] Wooley asserts that Xtera defamed his job performance to prospective employers. Both parties concede, and the Court agrees, that such a defamation would be "employment-related" and thus excluded from coverage. *See Altivia Corp.,* 161 S.W.3d at 54. Also included in the Complaint as background are the "employment-related" circumstances of Wooley's resignation, set out in detail. *See* Compl. ¶¶ 14-28. However, the primary injury Wooley alleges centers squarely on his wrongful arrest and detention. *See, e.g.,* Orig. Compl. ¶ 44 ("Wooley did not know that Xtera had reported him as a suspect to local law enforcement on the day of the shootings."); *id*. ¶ 45 ("The only reason that Wooley became the suspect was due to the false, misleading and inaccurate information provided by Xtera to the [police]."). Accordingly, the defamation claim rests, at least in part, on Wooley's belief that he had been reported by Xtera as a murder suspect. Because at least this one claim was within the policy coverage, Federal was obligated under Texas law to defend the entire lawsuit. *See Hudson Energy*, 811 S.W.2d at 554. On this issue GAIC prevails; and the full amount of litigation costs (the reasonableness of which has not been challenged) will be awarded to GAIC in damages.

---

[5] The Amended Complaints are substantially similar in all respects relevant to the determination here.

13

B.     Indemnity

The Court now turns to the question whether Federal must indemnify Xtera (and its employees named in the Wooley Lawsuit) for the settlement amount of $650,000. The answer is determined by the Court's reasoning above, with one significant distinction. Although Federal had a duty to defend the entire lawsuit, Federal is obligated to indemnify Xtera for covered claims only. *See Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971). Paragraph 75 of the Complaint (as repeated in the Second Amended Complaint) comes into play more importantly here. In it, Wooley makes the employment-related and thus excluded claim that Xtera defamed him to prospective employers. The settlement executed in the Wooley Lawsuit disposes of "all claims," which would include Paragraph 75. Plf. App. at 113-124. It thus becomes GIAC's burden to apportion the settlement dollar amount, if any, attributable to that excluded claim. *See Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.--San Antonio 1999, writ denied).

To meet its burden, GAIC provides affidavits from Wooley's lawyer and from the GAIC lawyer,[6] both of whom mediated the case, that no evidence was produced during discovery supporting Paragraph 75. *See* Plf. App. at 127. Accordingly, GAIC's lawyer testifies that no portion of the settlement amount was negotiated or paid in consideration of that particular claim. *See id*. at 134. Federal submits no probative evidence to rebut GAIC's position.[7] Absent an inference of collusion by Wooley's lawyer with GAIC –

---

[6] Federal's objections to the attorneys' affidavits are without merit and are overruled.

[7] Federal does submit a deposition excerpt from the Wooley Lawsuit. *See* Appx. at 22-23. In the excerpt, the Xtera witness relates that a prospective Wooley employer asked Xtera

14

and the Court has no evidence that even suggests the possibility – Federal has failed to raise a genuine issue of material fact with regard to allocation of the settlement for Paragraph 75.

One other allocation issue remains. The Court assumes without deciding that an additional Federal policy endorsement, which excludes from coverage defamation based on intentional falsehood, operates to exclude coverage for Wooley's allegations that Xtera made and/or failed to retract murder accusations knowing they were false.[8] *See* Pol. One at 13; Pol. Two at 9; Compl. ¶¶ 71-74, 89, 102. To meet its allocation burden on this issue, GAIC offers testimony from its attorney, present at mediation, that he negotiated the settlement amount solely in consideration of exposure for Wooley's bodily injuries related to incarceration. *See* Plf App. at 134. Those compensatory damages would have been the same whether the defamation was made with knowledge of falsity or not. Federal, invited but not present at the mediation table, neither argues nor offers evidence that any portion of the settlement was for punitive damages. *Cf. Scripps Tex. Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, *839 (Tex. App.--Corpus Christi 2003, writ denied) (noting that malice, defined as knowledge or reckless disregard of falsity, supports not compensatory but punitive damages in a defamation case). Summary

---

about Wooley. *See id*. However, the witness offers no testimony at all on what Xtera may or may not have told the prospective employer, defamatory or otherwise. The deposition excerpt is therefore not probative of what weight Paragraph 75 might have had in the Wooley Lawsuit.

[8] GAIC contends that claim exclusion on any basis other than the "employment-related" clauses has been waived. The Court need not decide this issue to determine the question of settlement allocation.

judgment is therefore awarded to GAIC for its indemnity claim in the full settlement amount.

    C.    <u>Defendant's Motion to Supplement Brief</u>

In a motion filed after briefing of the cross-motions for summary judgment was complete, Federal asks the Court to accept as additional summary judgment evidence the actual Xtera police reports that precipitated the Wooley Lawsuit. This additional evidence is rejected as untimely and irrelevant. *See* FED. R. EVID. 402. With regard to Federal's duty to defend, the reports exceed the bounds of the "eight corners rule." *See Heyden*, 387 S.W.2d at 24-26. The Court is thus prohibited from considering them.

With regard to Federal's duty to indemnify, the reports have equally little bearing. Federal concedes that the reports did not become available until well after the Wooley Lawsuit was concluded. The Court declines to speculate on what effect, if any, they may have had on the proceedings there. No information acquired today can change the fact that Wooley sued Xtera because he believed Xtera had accused him of murder. Having refused its duty to defend that case, Federal cannot now be heard to argue that Wooley was mistaken as to what Xtera actually reported to the police. Federal's motion to supplement is denied.

    D.    <u>GAIC's Statutory Claims</u>

The Court now turns to Federal's motion for summary judgment on GAIC's extra-contractual claims. In addition to suing for the litigation expenses and settlement amount, Plaintiff GAIC has also brought two Texas statutory claims against Federal for allegedly denying Xtera's insurance coverage in bad faith. The first of these is brought under the Texas Deceptive Trade Practices Act ["DTPA"]. GAIC sues (1) in its own

capacity as excess carrier (having paid Xtera's settlement and a portion of the litigation costs), and (2) as assignee of Xtera's claim, by contract with Xtera for purposes of this litigation.[9] In neither capacity does GAIC have standing to bring the claim.

Under well-established Texas law, an excess insurance carrier cannot sue a primary carrier under the DTPA. *See, e.g., National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 133-34 (Tex. App.--Houston [14th Dist.] 1997, writ denied) ("[A]n excess carrier is not entitled to recover statutory or punitive damages."), *aff'd*, 20 S.W.3d 692 (Tex. 2000); *Interfirst Bank Dallas v. United States Fid. & Guar. Co.*, 774 S.W.2d 391, 399 (Tex. App.--Dallas 1989, writ denied) (holding that a subrogee's recovery is limited to the amount paid). Accordingly, GAIC cannot sue Federal under the DTPA on its own behalf.

Under a 2004 Texas Supreme Court decision that resolved a split in the appellate courts on the issue, neither can GAIC bring a DTPA claim as an assignee. *E.g., PPG Indus., Inc. v. JMB/Houston Ctr. Partners Ltd.*, 146 S.W.3d 79, 92 (Tex. 2004). In *PPG Industries*, the Texas Supreme Court held "that assigning DTPA claims would defeat the primary purpose of the statute – to encourage individual consumers to bring such claims themselves." *Id*. at 82. Moreover, the court found that "the personal and punitive aspects of DTPA claims cannot be squared with a rule allowing them to be assigned as if they were mere property." *Id.* Xtera's DTPA claim can be brought by Xtera alone; and Xtera is not a party here.

---

[9] GAIC is assignee also of the statutory claims of the individually named Defendants in this case, to whom the Court refers collectively with Xtera as "Xtera" for purposes of this discussion.

GAIC argues plausibly in opposition that this case is distinguishable from *PPG Industries* because Xtera has retained a contractual interest in the outcome. It is true that a limited exception was carved out for DTPA assignability. *See id.* at 84. Specifically, the *PPG Industries* court did not preclude "equitable assignments, such as a contingency-fee interest assigned to a consumer's attorney." *Id*. at 92. GAIC, however, is not an attorney for Xtera; it is an arms-length provider of insurance services. Moreover, the "contingency fee" to which it analogizes would constitute 77% of the recovery. What GAIC really asks is for the Court to condone a secondary market in fractional DTPA claims. This the *PPG Industries* court unequivocally prohibited:

> It is one thing to place the power of treble damages in the hands of aggrieved parties or the attorney general; it is quite another to place it in the hands of those considering litigation for commercial profit.

*Id*. The court continued:

> The Legislature did not intend the DTPA for everybody. It limited DTPA complaints to "consumers," and excluded a number of parties and transactions from the DTPA, including claims by businesses with more than $25 million in assets, and certain claims in which consumers were represented by legal counsel. If DTPA claims can be assigned, a party excluded by the statute . . . could nevertheless assert DTPA claims by stepping into the shoes of a qualifying assignor. This would frustrate the clear intent of the Legislature.

*Id*. at 85 (footnotes omitted). Far from being distinguishable, this case represents the scenario the Texas Supreme Court intended to forbid.

The only question remaining is whether to extend the *PPG Industries* holding to foreclose GAIC's cause of action under the Texas Insurance Code as well. The Court is of the view that the extension is not only warranted but required. Like the DTPA, the

18

Insurance Code remedies are personal and punitive in nature. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991) (holding Insurance Code treble damages to be punitive and designed to deter Code violations). Like the DTPA, the Insurance Code makes no provision for assignability. Like the DTPA treble damages, Insurance Code damages are intended to encourage suits by aggrieved consumers. *See id*. In fact each and every policy argument articulated by the Texas Supreme Court against assignment of a DTPA claim applies with equal force to a claim brought under the Texas Insurance Code.

GAIC's reliance in opposition on the decision in *Crown Life* is unavailing. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000). In that case, decided before *PPG Industries*, the Texas Supreme Court held that an insurance agent is a "person" within the meaning of Article 21.21 such that he may bring a direct statutory cause of action on his own behalf. *See id*. at 389-90. The court did not address the question of assignability. *See id*. Here, in contrast, the law clearly forbids GAIC from bringing an Article 21.21 claim on its own behalf, and the only open question *is* assignability. *See National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955 S.W.2d at 133-34. The other cases on which GAIC relies were overruled directly by *PPG Industries*, or relied themselves on a decision so overruled. GAIC cannot sue under Article 21.21 of the Texas Insurance Code as assignee of Xtera's claims.

## IV. Conclusion

For the reasons set out above, GAIC's Partial Motion for Summary Judgment is **GRANTED**, and damages will be awarded to GAIC against Federal in the amount of $278,745.09 as to Federal's duty to defend the Wooley Lawsuit; and in the amount of $650,000 as to Federal's duty to indemnify the settlement.

For GAIC's claims under the DTPA and Insurance Code, Federal's motion for summary judgment is **GRANTED**; and those claims will be dismissed. Federal's motion for summary judgment is in all other things **DENIED**.

Defendant's motion to supplement the summary judgment evidence is **DENIED**. Defendant's motion for separate trials is **DENIED AS MOOT**. The issue of attorney's fees is not addressed at this time. *See* FED. R. CIV. P. 54(d)(2).

The parties are **DIRECTED** to submit an agreed form of final judgment reflecting the Court's decision herein by **noon, August 21, 2006.**

SO ORDERED.

DATED: August 8, 2006.

_____
BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS